**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Roberto Colon Santiago, ) | Civil Action No.: 9:21-cv-158-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION and ORDER** |
| ) | |
| Andrea Venezio and Sapphire Health, ) | |
| Group, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court on Defendants Andrea Venezio and Sapphire Health Group, LLC's motion to dismiss for lack of personal jurisdiction. ECF No. 7. Plaintiff Roberto Colon Santiago filed a response on February 19, 2021, ECF No. 10, and Defendants filed a reply on February 26, 2021, ECF No. 11. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons explained below, the Motion is granted and the complaint is dismissed without prejudice.

**BACKGROUND**

Plaintiff is a former resident of South Carolina and a current resident of California. He is professionally trained as an executive in the health care services industry. From May 2019 through August of that year he held an executive position with Surgical Care Affiliates ("SCA") in Hilton Head, South Carolina. When his employment with SCA ended, he contacted Defendant Sapphire Health Group, LLC, an executive search firm, to assist him in his job search. Defendant Andrea Venezio is the chief executive officer, principal owner, and managing director for Defendant

Sapphire Health Group, LLC (collectively, "Defendants").  Defendants are citizens of Texas.[1]  At the same time as he enlisted Defendants to help "in promoting him to other prospective employers in the surgery center industry," ECF No. 1-1 at ¶ 13, he retained the services of Adam Nedergaard, another recruiting professional.  Mr. Nedergaard subsequently presented Plaintiff for the position of Director of Operations at the Springfield Clinic in Springfield, Illinois.  Plaintiff alleges that he completed several favorable interviews with the Springfield Clinic and that its Director of Human Resources referred to him as an excellent candidate.  *Id.* at ¶ 16.  Ultimately, the Springfield Clinic offered the position to someone else.  Plaintiff alleges that the decision to hire another candidate was the result of Defendants' false and defamatory statements about him, specifically that "he had only worked for his most recent employer for a period of two weeks, that he did not have requisite experience, and that his educational degrees and other professional qualifications were not valid."  *Id.* at ¶ 20.  Plaintiff further alleges that Defendants acted to prevent him from finding employment in the health care industry.  On the basis of these allegations, Plaintiff asserts claims for civil conspiracy, defamation, tortious interference with prospective business relationship, breach of fiduciary duty, negligence, and negligent misrepresentation.

Plaintiff filed the complaint in state court on November 10, 2020 and effected service on Defendants on December 17, 2020.  Defendants removed the action to this court on January 15, 2021 and filed the Motion to Dismiss on January 22, 2021.  Defendants argue the court lacks personal jurisdiction over them and asks in the alternative, should the court find jurisdiction, that the court transfer the lawsuit to the Eastern District of Texas.  The court is sufficiently apprised of the issues and finds that a hearing would not materially aid in its adjudication of the Motion.

---

[1] Defendant Venezio is the sole owner and member of Defendant Sapphire Health Group, LLC. ECF No. 7-1 at 19, ¶¶ 2, 3.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(2), the court may dismiss a case for lack of personal jurisdiction. "[A] defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Id.* at 268. Here, where the court addresses the personal jurisdiction question by reviewing the parties' motions and briefs and the allegations in the complaint, Plaintiff "need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* (citing *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989)). While the court must construe all factual allegations in the light most favorable to the nonmoving party, the showing of personal jurisdiction "must be based on specific facts set forth in the record in order to defeat [a] motion to dismiss." *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, "without converting the motion to dismiss into a motion for summary judgment." *Id. See Grayson*, 816 F.3d at 268 (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (explaining that courts may consider affidavits from any party when applying the prima facie standard)). Ultimately, "a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Grayson*, 816 F.3d at 268 (citing *Combs,* 886 F.2d at 676) (noting that "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence").

**DISCUSSION**

**I.     Arguments and Legal Authority**

Defendants are citizens of Texas and they argue that the court lacks personal jurisdiction over them.  ECF No. 1-1 at ¶ 3; ECF No. 7-1 at ¶¶ 2-3.  A federal district court sitting in diversity can exercise personal jurisdiction over a nonresident defendant if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment."  *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).  The South Carolina long-arm statute is coextensive with the due process clause, which reduces the question to whether the exercise of personal jurisdiction would violate due process.  *Moosally v. W.W. Norton & Co.*, 594 S.E.2d 878, 883 (S.C. App. 2004).  Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Personal jurisdiction may be exercised generally or specifically.  General jurisdiction is established where the defendant's contacts with the forum state have been "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), and are "so constant and pervasive as to render it essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).[2]  "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship."

---

[2] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," such as where it is incorporated and where it has its principal place of business.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

*Fidrych v. Marriott International, Inc.*, 952 F.3d 124, 131-32 (4th Cir. 2020).  By contrast, specific jurisdiction is based on a defendant's conduct in the state connected to the lawsuit.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales*, 466 U.S. at 414.  Where the defendant lacks the contacts to be considered essentially at home in the forum state, "the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state."  *Fidrych*, 952 F.3d at 132 (citing *Daimler*, 571 U.S. at 126-27).  Specific jurisdiction depends upon "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

Plaintiff concedes he has not made a prime facie case for the exercise of general jurisdiction over Defendants.  ECF No. 10 at 7.  He argues however that he "has made a prima facie showing that Defendants have availed themselves to the jurisdiction of courts in South Carolina by way of their sufficient minimum contacts with the State of South Carolina, and also by aiming their tortious conduct, and the resulting harms of said conduct, within South Carolina."  ECF No. 10 at 8.  Should the court disagree, he asks in the alternative for an opportunity to conduct discovery "to see if additional facts may be learned that would make the proper exercise of jurisdiction over these Defendants more certain."  *Id.* at 10.

Based on Plaintiff's concession, the sole question before the court is whether it has specific jurisdiction over Defendants.  As to the first prong of the test referenced above, the Fourth Circuit

has identified the following factors the court may consider in assessing whether a business has purposefully availed itself of a forum:

> Whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted). The second prong of the test requires "that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citations omitted). And the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there":

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* at 279.

## II.     Application and Findings

In support of their Motion to Dismiss, Defendants submit an affidavit in which Defendant Venezio attests to the following. Defendant Sapphire Health "is a recruiting firm that assists ambulatory surgery centers, surgical hospitals, and health systems in finding full-time executive employees to meet the facility's clinical and operational leadership needs." ECF No. 7-1 at 20, ¶ 7. As part of this process, Sapphire Health "enters into agreements with facilities that are seeking new executive leadership"; "[o]nce Sapphire Health successfully assists the facility in hiring a new

6

executive employee, the facility pays Sapphire Health pursuant to the terms of the agreement between Sapphire Health and the facility." *Id.* at ¶ 8.  Sapphire Health "does not enter into contracts with individuals to assist them in finding employment and receives no money from individuals seeking employment." *Id.* at ¶ 9.  Defendant Sapphire Health has never kept a business office in South Carolina or employed workers in South Carolina.  *Id.* at ¶¶ 5-6.

Defendant Venezio attests that Plaintiff contacted her in September 2019 via the online service Linkedin.  ECF No. 7-1 at 20, ¶ 11.  They subsequently spoke over the telephone at which time Plaintiff told Defendant Venezio that he was unhappily employed at SCA as chief executive officer and was looking for alternative employment.  *Id.* at ¶ 12.  Defendant Venezio attests that during their telephone conversation, she told Plaintiff that she "was not representing any facilities with open positions that [meet] his qualifications," and explained that "Sapphire Health can only assist in placing individuals with facilities that Sapphire Health represents or with whom Sapphire Health obtains an agreement."  *Id.* at ¶ 13.  She further explained that she could not represent him to a facility if he had already applied directly to an open position with the facility.  *Id.*  Defendant Venezio reviewed the positions to which Plaintiff had recently submitted applications and determined that he had "applied directly to almost every ambulatory surgery center management company or health system in the United States that Sapphire Health has worked with in the past, and thus, Sapphire Health [was] precluded from presenting Mr. Santiago to those Sapphire Health clients."  *Id.* at ¶ 14.  Therefore, Defendant Venezio told Plaintiff she would not be able to assist him.  *Id.* at ¶ 15.  Defendant Venezio attests that her communication with Plaintiff consisted of "two phone calls and a few e-mails, initiated by Mr. Santiago, during a period of approximately one week," and which occurred while she was located in Texas.  *Id.* at ¶¶ 16, 17.  She further

7

attests that Defendants did not enter into a contract or other form of agreement with Plaintiff, did not present him to prospective employers, and did not solicit Plaintiff's business. *Id.* at ¶¶ 18-20.

Plaintiff summarizes his understanding of the operative facts as follows:

> Defendants agreed to perform services originating in the State of South Carolina for a South Carolina resident who expressed a desire to find alternate employment while hopefully remaining in the State of South Carolina; Defendants never expressed any refusal to assist Plaintiff with his search for alternative employment or placement; Defendants never expressed any geographical limitations associated with their business activities or job search assistance; Defendants promote themselves as a business with presence or activities occurring worldwide and nationwide; Defendants engaged in intentional tortious conduct that amounted to civil conspiracy, defamation, and breach of fiduciary duty by making false and slanderous statements to a prospective employer in the State of Illinois while knowing that Plaintiff was a resident of South Carolina and would suffer ha[r]m or damages in South Carolina due to this conduct.

ECF No. 10 at 8. Plaintiff additionally disputes Defendant Venezio's recollection of their communication. Plaintiff attests that "[a]t no time did Andrea [Venezio] say that she would not be able to represent me," and "[a]t no time did these Defendants advise me that they could not or would not assist me in my search for executive level employment in the surgery center industry"; rather, "[t]o the contrary, my discussions with Andrea Venezio led me to believe that she was willing to provide job placement assistance to me, and that she would indeed provide me with professional services and look out for my best interests." ECF No. 10-1 at ¶ 12. Plaintiff attests that Defendant Venezio said she had "much experience working with [SCA]" and spoke of her close and ongoing relationship with the person who served as Plaintiff's supervisor at SCA in Hilton Head. *Id.* at ¶¶ 10, 14.

Accepting the facts summarized by Plaintiff as true and viewing the factual disputes in his favor, he fails to make a prima facie showing of jurisdiction. The contentions regarding the geographical scope of Defendants' business are relevant to a finding of general jurisdiction, which is not at issue here. Indeed, the Supreme Court explained in *Goodyear* and *Daimler* that "only a

8

limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," specifying that for an individual, the paradigm forum is the person's domicile and for a corporation, that forum is the place of incorporation or principal place of business. *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). The *Daimler* court further explained such affiliations "have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable," and therefore plaintiffs have "recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* Only in the "exceptional case" can a corporate defendant's contacts with another forum be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 138, 139 (rejecting as "unacceptably grasping" the argument that general jurisdiction could be exercised "in every State in which a corporation engages in a substantial, continuous, and systematic course of business"). There simply is no factual support in the record for finding general jurisdiction over either Defendant.

The contentions regarding the parties' consummation of a working relationship while Plaintiff was living in South Carolina and Defendants' alleged tortious conduct are relevant to a finding of specific jurisdiction, but are insufficient to show either that Defendants availed themselves of the privilege of conducting activities in South Carolina *or* that Plaintiff's claims arise out of activities directed at South Carolina. On consideration of the factors identified above with respect to purposeful availment, the court notes that Defendants do not maintain offices or agents in South Carolina and do not own property in South Carolina. To the extent the parties entered into an agreement to work together, there is no allegation that they reduced the agreement to writing or included a provision that South Carolina law would govern any disputes. There is likewise no allegation that Defendant Venezio made in-person contact with Plaintiff regarding

9

their alleged business relationship while Plaintiff was in South Carolina. Additionally, while Plaintiff attests he told Defendant Venezio of his preference to find employment "east of the Mississippi River," and ideally in South Carolina, North Carolina, Georgia, or Florida, ECF No. 10-1 at ¶ 8, there is no allegation that the performance of their alleged agreement was to occur within South Carolina. The court addresses the remaining factors regarding Defendants' solicitation and/or initiation of business and presence of significant or long-term business activities in South Carolina and the nature, quality, and extent of the parties' communications as follows.

The contacts necessary for a finding of specific jurisdiction "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Company v. Montana Eighth Judicial District Court*, --- U.S. ----, 141 S. Ct. 1017, 1025 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The contacts must show that the defendant deliberately "reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there"; but even then, the forum State may exercise jurisdiction only when the claims "arise out of or relate to the defendant's contacts" with the forum. *Id.* (quotations and citations omitted).

Plaintiff learned of Defendants during an online search that he initiated. Plaintiff attests that while "searching for employment in 2019 on the website Indeed.com, [he] noticed a position where Sapphire was the contact or recruiter," which "led [him] to research Sapphire on the internet." ECF No. 10-1 at ¶ 7. Plaintiff then "contacted Andrea Venezio about [his] employment search, and she interviewed [him]." *Id.* at ¶ 8. Plaintiff does not suggest that Defendants' website targets South Carolina residents for commercial transactions any more than it targets any other state, nor does he assert that the website is interactive to such a degree as to constitute a method by which Defendants "enter" the State for jurisdictional purposes. *Fidrych*, 952 F.3d at 141-43

(noting that the "interactivity of a website is a jurisdictionally relevant fact," but the court must still focus on whether the defendant "has *purposefully directed* its activities at residents of the forum"; and explaining that a moderately interactive website that is not used to target South Carolina residents in particular "does not create the substantial connection to South Carolina necessary to support the exercise of jurisdiction") (alterations and citations omitted) (citing *ALS Scan*, 293 F.3d at 714 as recognizing "purposeful availment as the touchstone of the minimum-contacts analysis"). Plaintiff concedes he initiated contact with Defendant Venezio and that their correspondence lasted no more than a couple of weeks.[3] Furthermore, it is unclear from the complaint where Plaintiff lived when he interviewed for the Springfield Clinic position, when Defendants engaged in the alleged tortious activity, and when he suffered the damages he claims. Plaintiff alleges merely that he was living in South Carolina when he contacted Defendants and that he wished to remain in South Carolina. An inference can be made that Plaintiff was living in South Carolina at the time Defendants engaged in the allegedly tortious activity, *see* ECF No. 10-1 at ¶¶ 20-21; however, the Supreme Court has specified that while the place of a plaintiff's residence and injury may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit, they cannot *create* the defendant's contact with the forum. *Ford Motor Company*, 141 S. Ct. at 1031-32 (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019) (explaining that while "in-forum effects of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction," such effects "must create a connection to the *forum*, not just to parties who happen to live there," and specifying that such effects must be "substantial," in keeping

---

[3] Plaintiff does not dispute or contradict Defendant Venezio's attestation that Plaintiff initiated the telephone and email communication with her and that their correspondence lasted no longer than approximately one week. ECF No. 7-1 at 21, ¶ 16.

with the principle that "a person cannot be haled into the forum simply because he knew that his conduct would have incidental effects there").

The court is not persuaded that Defendants' online presence and the handful of telephone calls and emails between Plaintiff and Defendant Venezio taken together qualify as purposeful availment. However, even if such activity does so qualify, the alleged tortious conduct does not arise out of the parties' communication and alleged contractual agreement but out of the alleged statements Defendants made to the Springfield Clinic.[4] As a whole, the jurisdictional allegations are insufficient to show an affiliation between South Carolina and the underlying controversy. *See Goodyear Dunlop Tires Operations*, 564 U.S. at 919. *See also Bristol-Myers Squibb Co. v. Superior Court of California*, --- U.S. ----, 137 S. Ct. 1773, 1780 (2017) ("In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*") (citations and alterations omitted).

Plaintiff nonetheless asserts he believes jurisdiction over Defendants is appropriate "based upon their ongoing business relationship with [his] former employer in South Carolina, and based upon their agreement to provide assistance to [him] while knowing [he] was a South Carolina resident, and based upon their deliberate tortious conduct toward [him] that was certain to cause [him] to suffer harm in South Carolina." ECF No. 10-1 at ¶ 21. However, none of Plaintiff's claims arise out of Defendants' dealings with SCA in Hilton Head, accordingly those contacts are irrelevant to this analysis. *See Fidrych*, 952 F.3d at 140 ("Mariott's qualification to do business in South Carolina and its involvement in ninety hotels in the state have nothing to do with the claims

---

[4] Nor does the alleged tortious conduct *relate to* the parties' communications and agreement such that the exercise of specific jurisdiction is appropriate. *See Ford Motor Company*, 141 S. Ct. at 1026 (explaining that "some relationships will support jurisdiction without a causal showing," but "[t]hat does not mean anything goes," and rather "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum").

asserted in this case and thus are not relevant to our inquiry"). And as described above, Plaintiff cannot rely on his residence in the forum state and injury suffered in the forum state to create Defendants' contacts with that state. Finally, the separate contacts he has described, i.e., abbreviated communication spanning a two-week period and a tentative agreement to work together, are insufficient to satisfy the minimum-contacts requirement of the personal jurisdiction inquiry. *See Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state"). Plaintiff fails to satisfactorily allege that Defendants purposefully availed themselves of the privilege of conducting activities in South Carolina and Plaintiff's claims do not arise out of Defendants' minimal activities that could be considered as directed at this state. Accordingly, the exercise of personal jurisdiction over Defendants would not be constitutionally reasonable.

As a final matter, Plaintiff asks permission to conduct jurisdictional discovery so as to "explore the extent of Defendants' contacts and activities within the forum state in an effort to learn if general jurisdiction may be found over them." ECF No. 10 at 7. As discussed above, the present state of personal jurisdiction jurisprudence leaves little doubt that establishing general jurisdiction over a corporation in a forum other than where that defendant is incorporated or has its principal place of business is difficult and uncommon. Plaintiff has offered no factual allegations to suggest that discovery may yield information to support the exercise of general jurisdiction over Defendants. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003) (noting that a court acts within its discretion in denying jurisdictional discovery where a plaintiff "offers only speculation or conclusory assertions about contacts with a forum state"). Additionally, to the extent Plaintiff intended to seek discovery to develop a basis for specific jurisdiction, there is no dispute that the claims Plaintiff asserts arise

13

out of activity directed at Illinois. For these reasons, the court denies the request of jurisdictional discovery.

The Motion to Dismiss, ECF No. 7, is granted and the complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

May 5, 2021
Charleston, South Carolina